78 SUPREME COURT OF GEORGIA.

Buntyne, adm'r, &c. vs. Stone and another.

No. 15.—JAMES E. BUNTYNE, adm'r, &c. vs. WILLIAM H. R. STONE and another.

[1.] One of two subscribing witnesses to a bill of sale, for the purpose of carrying the same to record, made affidavit "that he saw the subscribing witness subscribe his name to the within bill of sale, and acknowledged for the within purposes :" *Held*, that the construction of such an affidavit is, that he saw the witness attest the acknowledgment made by the maker of the deed.

[2.] Where the complainant has an adequate and sufficient remedy at Common Law, a demurrer to the bill, on this ground, should be sustained.

[3.] Where a bill sets forth the fact, that one of the distributees of an estate had released his interest in said estate, "merely for the purpose of making himself a competent witness" for the administrator, in a case brought for the recovery of slaves; and also alleges that such distributee is fraudulently combining with the administrator to recover these slaves, but does not allege that the release was not legal and in good faith made, nor that it was fraudulent and void : *Held*, that such released distributee could not properly be made a party to the bill.

In Equity, in Walton Superior Court. Decision by Judge JACKSON, at Chambers, November 30th, 1854.

William H. R. Stone and Thomas S. A. Stone, filed their bill in Walton Superior Court, alleging the following facts: That on 8th May, 1816, Thomas Stone purchased of William T. Hay, then of Jasper County, a negro woman and her two children, and took a bill of sale to them, attested by two witnesses; that on 16th November, 1816, one of the witnesses

made the following informal affidavit, before Spencer Cone, J. I. C. of said County of Jasper, viz: "Georgia, Jasper County: Personally appeared before me John McAlister, and being duly sworn saith, that he saw the subscribing witness subscribe his name to the within bill of sale, and acknowledged for the within purposes." Upon this probate, it was recorded, on the same day, and the original has since been lost. In the same year, Hay went off to the State of Tennessee, and was there murdered. Hay left three sisters, one of whom married David Johnson, and all of whom lived in this State, and were able to take out administration on his estate had they desired it. Thomas Stone then had possession of the negroes, claiming them as his own, and continued in possession, (selling one of them and using the proceeds,) till his death, in 1850, living near the said sisters of Wm. T. Hay and their husbands, all of them needing the property if it was theirs, and two of them being very poor; and yet, none of them making any claim whatever to the said negroes, or the proceeds of the one sold. Thomas Stone, by his will, bequeathed the negroes to the complainants. In 185-, James E. Buntyne, who intermarried with one of the daughters of David Johnson, procured letters of administration upon the estate of said Hay, for the fraudulent purpose of recovering these negroes; and David Johnson, combining with him in this fraudulent purpose, released all of his interest in said estate to his children, merely for the purpose of making himself a competent witness in the case. Buntyne, as administrator, commenced suits against the complainants for the negroes, and relied solely upon the testimony of Johnson, who swore to admissions of Thomas Stone, which, from the length of time and the death of Thomas Stone, it was impossible for complainants to contradict. Hay left no debts at the time of his decease. The bill farther charged, that it was now pretended that William T. Hay was a minor when the bill of sale was made; and in order to establish this, said Johnson had destroyed the record of his age, which appeared in the family Bible.

The prayer was for the establishment of a copy of the lost bill of sale, if the Court held the probate to be insufficient; and for the perpetual injunction of the suits at Law by the administrator.

A demurrer was filed to this bill—1st. For the improper joinder of David Johnson as a party. 2d. For want of equity. The Court over-ruled the last ground, and defendants excepted. The Court sustained the first ground and ordered the bill dismissed, as to Johnson, and complainants excepted.

Defendant, Buntyne, as administrator, then filed his answer as follows, and moved to dissolve the injunction:

He admitted the death of Hay, and that the negroes were in the possession of Thomas Stone at the time; but he insisted that he procured possession through David Johnson, and under the pretence that he wanted the woman to cook for him, he being the step-father of Hay and his sisters, and that it was only by permission of one of Hay's sisters that he thus got possession, which he was to retain until Johnson called for a re-delivery of them. He denied that Stone set up any claim whatever to them. He admitted that Stone kept possession of them as long as he lived, but insisted that he set up no claim to them, but always acknowledged the rights of Hay's sisters. He admitted the sale, by Stone, of one of the negroes, but insisted that he said that he would account for the money, the proceeds of the sale. Defendant did not admit or deny the execution of the bill of sale, but insisted, that if made at all, it was simply intended as a power of attorney, to enable Stone to sell the negroes for Hay. The answer insisted that Hay was a minor when the paper was executed; denied the fraudulent destruction of the evidence in the Bible; denied all fraudulent combination with Johnson, and insisted that the release made by him was in good faith. It admitted the ability of the parties to take out administration, and averred that their reason for not so doing, was their confidence in the statements of Thomas Stone.

The Court refused to dissolve the injunction, and defendants excepted.

Buntyne, adm'r, &c. *vs.* Stone and another.

Both parties assigned error on the exceptions filed by them.

Cobb & Hull, for Buntyne.

T. R. R. Cobb, for Stone.

*By the Court.*—Starnes, J. delivering the opinion.

[1.] The bill of sale from Hay to Stone, was admitted to record upon the affidavit of John McAlister, one of the two subscribing witnesses, who swore " that he saw the subscribing witness subscribe his name to the within bill of sale, and acknowledged for the within purposes."

It has been thought doubtful whether, according to this phraseology, the witness refers to an acknowledgment by the other witness or by the grantor; and the bill in this case prayed for a construction, by the Court, of this affidavit.

It is our opinion that an acknowledgment of having signed the instrument by the maker of the deed, was meant. The phraseology is very informal, and was, no doubt, the work of an uneducated person. But the meaning seems to be determined by the fact, that there was nothing for the other witness to acknowledge. McAlister says that he saw him subscribe his name to the instrument. The acknowledgment, then, could only have been by the maker. And such, we hold, is the construction to be placed upon it.

[2.] We think, therefore, that the Court erred in over-ruling this demurrer—

1. Because that the allegations of the bill show a documentary title to the slaves in question, which is not deficient on account of irregularity in the probate of the bill of sale, and of which it is our opinion that the defendants might have availed themselves, in defence of the Common Law action.

2. Because they set forth such facts as, uncontroverted, appear to show that title to the slaves in question vested in Thomas Stone, by virtue of the Statute of Limitations of our

State; and this, too, we think might have been relied upon in the Common Law action.

3. Because the facts relied upon as presenting an equitable bar, by reason of the lapse of time, and all other grounds for equitable interposition, which are set forth in said bill, are such as may be set up successfully as pleas to the Common Law action.

[3.] The Court below was right, in our opinion, in dismissing the bill as to David Johnson. According to the case made by that bill, he had relinquished all interest in the estate of Wm. T. Hay. It is true, the bill alleges that Johnson was fraudulently combining with Buntyne to recover these slaves; but it does not state that he had not executed a legal and *bona fide* release. On the contrary, it alleges that he had executed a release, merely for the purpose of making himself a competent witness. Of course, if he had made himself a competent witness, he had released his interest; and if he had released his interest, he should not have been made a party.

If it was intended to rely upon the fact that his release was a sham and a fraud, this should have been distinctly alleged and assigned as a reason why he was made a party.

Judgment reversed.